UNITED STATES DISTRICT COURT
DISTRICT OF NEWARK, NEW JERSEY
----------------------------------------------------------X

MARGARET CHINERY,

                Plaintiff

-Against-

EXXON MOBILE CORPORATION

                Defendants
----------------------------------------------------------X

RECEIVED-CLERK
U.S. DISTRICT COURT

2007 AUG -2  P 3 54

**COMPLAINT
AND JURY DEMAND**

07 - 3658
(DMC)

        Plaintiff, MARGARET CHINERY, by her attorneys, LAW OFFICES OF DAWN L. JACKSON, LLC alleges as follows:

### I. *PRELIMINARY STATEMENT:*

1. This is an action for an award of damages, attorney's fees and other relief on behalf of Margaret Chinery, ("Ms. Chinery"), a former employee of Defendant, Exxon Mobile Corporation, who has been harmed by the Defendant's illegal discriminatory actions.

2. This action arises under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §2000 (e), *et seq.*, as amended by the Civil Rights Act of 1991 at 42 U.S.C. §1981(a), 42 U.S.C. §1981 ("§1981"), and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5.1 *et seq.*

### II. *JURISDICTION AND VENUE:*

3. The original jurisdiction of this Court is invoked, and venue is in this judicial district, pursuant to Title 28 U.S.C. §§1331 and 1391. Ms. Chinery's claims are substantively based on Title VII and §1981.

4. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367, to consider Ms. Chinery's claims arising under the NJLAD.

5. All conditions precedent to the institution of this suit have been fulfilled. On May 3, 2007, a Notice of Right to Sue was issued by the United States Equal Opportunity Commission ("EEOC"). This action has been filed within ninety (90) days of the issuance of the Notice of Right to Sue.

### III. INTRODUCTION

6. This is an action to vindicate the civil rights of MARGARET CHINERY, hereinafter, "plaintiff." Plaintiff contends that the terms, conditions and privileges of her employment relationship with defendants were adversely affected, in part, because of her disability and she was retaliated against. Plaintiff contends that she would not have been terminated but for her disability and subsequent retaliation.

### IV. PARTIES

7. MARGARET CHINERY, hereinafter, "plaintiff," was employed at all times relevant by defendant, and resides at, 165 ESSEX AVE, METUCHEN, New Jersey.

8. EXXON MOBILE CORPORATION, is a global energy corporation with it's corporate headquarters and principal place of business in IRVING, TEXAS.

## IV. FACTUAL AVERMENTS

9. Ms. Chinery began her employment with Exxon Mobile Corporation at their Edison, New Jersey location, on June 7, 2000.

10. Upon Ms. Chinery's engagement as an employee she advised her Supervisor that she suffered from Diabetes.

11. On March 1, 2005, there was a snowstorm in and around the Edison, New Jersey area.

12. There was an accumulation of 6-12 inches of snow.

13. The defendant has employees and an outside company to conduct snow removal of the premises both during and after the storm.

14. The defendant's policy is to have a Work Coordinator present when outside contractors are performing jobs on the Exxon premises.

15. During the snow removal there was no supervision by an Exxon Work Coordinator.

16. The Work Coordinator is also responsible for issuing a "safe work permit."

17. The safe work permit is a document that certifies that the area an individual is going to work in is safe and the job is being performed in a safe manner.

18. The safe work permit was never issued for the March 1, 2005, snow removal because no Work Coordinator was present.

19. On March 3, 2005, while walking from the Maintenance Shop to the Tank Farm, Ms. Chinery slipped and fell on a patch of ice.

20. Ms. Chinery was transported by ambulance to the Robert Wood Johnson University Hospital, in New Brunswick, New Jersey.

21. Ms. Chinery was diagnosed with a dislocation and multiple fractures of the right ankle.

22. On March 4, 2005, Dr. Charles Gatt, performed surgery on the severely injured ankle.

23. Ms. Chinery's ankle was so damaged that Dr. Gatt implanted nine screws and one stainless steel plate in her ankle.

24. The screws and steel plate will remain implanted in Ms. Chinery's ankle for the duration of her life.

25. Ms. Chinery's walking will be labored forever and she has a permanent limp.

26. Two weeks after her accident, the defendant conducted a fact-finding investigation regarding Ms. Chinery's accident.

27. After the investigation, Ms. Chinery was informed that she had willfully disobey a policy by choosing to exit from a door that had snow 15 feet beyond the door.

28. On May 4, 2006, Ms. Chinery was called upon by the Departmental Foreman, Mr. Joe Selbeau and directed to Calibrate a pressure Transmitter.

29. The act of Calibrating a Pressure Transmitter, normally consisted of closing an isolation valve and opening a test port and performing the pressure test.

30. However, this particular isolation valve was leaking and had been leaking for several years.

31. Management was aware of the leak and neglected to have it repaired.

32. The valve leakage prevented the pressure test from being performed accurately.

33. Ms. Chinery would have to climb several stairs, jump over a gap of about 3 feet wide, and climb across an extremely slippery dome to the other side, unbolt the flange and place a blank flange so reactor was not exposed to air and then test could be performed.

34. Ms. Chinery stated that due to the restricted flexibility in her ankle, Calibrating the Pressure Transmitter in this manner would put her at greater risk of re-injuring her ankle and there was a safer way to perform the task.

35. Joe indicated that he needed to speak with Mr. Per Husby, his supervisor about her disability due to her ankle.

36. Later the same day she met with Mr. Husby, Mr. Majul and Mr. Selbeau and was informed that she was being placed on disability until an Independent Medical Evaluation (IME) could be performed on her ankle.

37. On May 18, 2006, Ms. Chinery received her IME from Dr. Robert Skerker.

38. On May 31, 2006, the IME revealed that Ms. Chinery required the following reasonable accommodations:

        a. ½ hour sitting or walking after 4 hrs of standing
        b. No engaging in Prolonged Standing for more than 4 hours
        c. Restricted kneeling or squatting
        d. Restricted working on uneven surfaces
        e. Restricted climbing of structures or ladders

39. These restrictions, due to Ms. Chinery's surgically repaired ankle, could have been accommodated by the defendant with minimal effort on the defendant's part.

40. On June 9, 2005, Ms. Chinery received a letter of suspension indicating that the March 3, 2005, slip and fall was completely her fault and she was suspended without pay for three days, beginning on June 10, 2005.

41. Mr. Charles Majul, Ms. Chinery's Union Representative, requested that she be given a paper suspension.

42. A paper suspension is when an employee does not miss work, continues to receive salary and have record of the suspension placed in their file.

43. Management indicated that they would grant the Union's request if Ms. Chinery agreed to write a letter indicating the accident was her fault and agreed not to file a grievance on the suspension.

44. Ms. Chinery rejected management's offer and served the three days suspension without pay.

45. On June 7, 2006, Steve Hamilton, Plant Manager, John Ramos, Human Resources Manager, Mr. Husby and Mr. Majule, met with Ms. Chinery.

46. During the meeting, Ms. Chinery was informed that she would not be provided with accommodations and that because the IME revealed she had permanent restrictions, she could not return to work and as a result she was placed on Short-Term Disability.

47. Once the short-term disability expired Ms. Chinery was then placed on long-term disability, losing her medical benefits and never returning to work for the defendant.

48. On June 10, 2005, Mr. Joseph Coco, Ms. Chinery's co-worker, tripped over a pallet and broke his arm, at the Exxon Plant.

49. Mr. Coco was never suspended nor did he receive ant disciplinary action because of his accident.

50. Ms. Chinery complained on several occasion regarding the unsafe conditions in her workplace and abusive behavior of the foreman in the plant.

51. Two weeks before she was placed on Permanent Disability she again complained this time to Mr. Bruce Macklin, the Vice President of Global Manufacturing that the plant was unsafe.

52. On August 4, 2006, Ms. Chinery filed a complaint with the Equal Employment Opportunity Commission (EEOC).

53. On March 7, 2007, the EEOC determined that the defendant had denied Ms. Chinery reasonable accommodations based on her disability.

54. The EEOC Conciliation process between the parties failed and the Notice of Right to Sue was issued to the plaintiff on May 3, 2007.

## **FIRST COUNT**

## **(DISCRIMINATION BASED ON DISABILITY)**

51. Plaintiff incorporates herein as if set out in full all allegations set forth in all preceding paragraphs of this Complaint.

52. Plaintiff was impermissibly treated differently from others because of his disability and defendant failed to provide plaintiff with reasonable accommodations regarding her disabilities, and such conduct did constitute an unlawful employment practice under the NJLAD and Title VII.

53. Defendant's proffered reason for terminating plaintiff is a pretext to discrimination.

54. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered great emotional pain, suffering and humiliation as a result of this discriminatory treatment.

## SECOND COUNT

## (HOSTILE ENVIRONMENT)

55. Plaintiff incorporates herein as if set out in full all allegations set forth in all preceding paragraphs of this Complaint.

56. The aforesaid discriminatory conduct engaged in by the Defendants created a hostile work environment for the Plaintiff in violation of the Law Against Discrimination, N.J.S.A. 10:5 1, *et seq.*

57. This discriminatory and hostile work environment caused plaintiff embarrassment, emotional distress, loss of income, physical distress and other damages.

## THIRD COUNT

## (RETALIATION)

58. Plaintiff incorporates herein as if set out in full all allegations set forth in all preceding paragraphs of this Complaint.

59. Plaintiff engaged in protected activity known to the defendant.

60. Plaintiff was subjected to an adverse employment decision.

61. There is a causal link between the protected activity and the adverse employment decision.

## FOURTH COUNT

### SEX DISCRIMINATION

62. Plaintiff herby repeats and realleges each allegation in each numbered paragraph above.

63. The actions of Defendant, through its agents, servants and employees, in terminating Ms. Chinery because of her sex female, constituted a violation of Title VII.

64. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Ms. Chinery sustained permanent and irreparable harm, resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

## FIFTH COUNT

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

65. Plaintiff incorporates herein as if set out in full all allegations set forth in all preceding paragraphs of this Complaint.

66. Defendant intentionally and/or with deliberate indifference undertook outrageous acts and omissions directed at Plaintiff with the intent or purpose of inflicting mental harm upon him.

67. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered great emotional pain, suffering and humiliation as a result of this discriminatory treatment.

9

## **PRAYER FOR RELIEF**

**WHERFORE**, Plaintiff respectfully requests that this Court enter judgment:

(a) Declaring the acts and practices complained of herein are in violation of the New Jersey Law Against Discrimination;

(b) Enjoining and permanently restraining these violations;

(c) Directing Defendant to take such affirmative action as is necessary to cure the unlawful employment practices;

(d) Make whole relief for all earnings, wages, seniority, increments and other benefits that plaintiff would have received but for the unlawful practices of the defendants;

(e) Awarding on the First Count, compensatory, punitive, mental anguish and pain and suffering damages as a result of Defendant's discriminatory conduct in excess of $2,000,000;

(f) Awarding on the Second Count, compensatory, punitive, mental anguish and pain and suffering damages as a result of Defendant's discriminatory conduct in excess of $2,000,000;

(g) Awarding on the Third Count, compensatory, punitive, mental anguish and pain and suffering damages as a result of Defendant's discriminatory conduct in excess of $2,000,000;

(h) Awarding on the Fourth Count, compensatory, punitive, mental anguish and pain and suffering damages as a result of Defendant's discriminatory conduct in excess of $2,000,000;

(i) Awarding on the Fifth Count, compensatory, punitive, mental anguish and pain and suffering damages as a result of Defendant's discriminatory conduct in excess of $2,000,000;

(j) Awarding Plaintiff such interest as is allowed by law (pre- and post judgment);

(k) Awarding Plaintiff her reasonable attorneys fees and costs; and

(l) Granting such other and further relief as this Court deems just and proper;

Dated:     Newark, New Jersey New
           August 1, 2007

                                      Respectfully Submitted,
                                      Law Offices of Dawn L. Jackson, LLC
                                      By /s/ Dawn L. Jackson
                                      Dawn Jackson
                                      744 Broad Street,
                                      16th Floor
                                      Newark, New Jersey 07102
                                      (973) 735-0582 (Telephone)
                                      (973) 735-0583 (Facsimile)